Case No. 19-4182, Patricia Kushino et al. v. FAA et al. Oral argument not to exceed 15 minutes per side. Mr. Strobo for the petitioner. Thank you, Deputy Hance, and good afternoon, Your Honors. Can you hear me okay? This is my first question. Yes. Okay. And I just want to the Court, Ms. Roundtree. In this case, the FAA has essentially sanctioned the destruction of my client's property. And while we're not necessarily requesting that you stop that destruction, we're not here for that today. We're here today to require the FAA to comply with its obligations underneath us before the FAA allows that destruction to occur and for additional environmental harms to occur on the property. To that end, the FAA has failed to review significant new changes and circumstances that are having a greater environmental impact to my client's property and properties even further downstream. Those impacts are both environmental, economic, and essentially damages to an historical property on site. Today, we're asking the Court to remand that case back to the FAA for the FAA to supplement their need for review to take into account these new significant changes. And also, the fine that the FAA action in order to supplement the record has been unlawfully withheld or unreasonably delayed under the APA. So, the significant circumstances here, Your Honors, are essentially the original EA in this case, which we had a lawsuit over in this Court several years ago, which we'll get to in a second. But in that original EA, the environmental assessment produced by the FAA, they did comment on the stormwater coming off the property, but it didn't give much concern to it. However, at that time, the stormwater from this airport expansion project that we're litigating here today was directed to go directly essentially to the Ohio River. And as you know, the Ohio River is a very big water body. It can accept stormwater drainage like this pretty readily. But after this EA was produced, after the finding of no significant impact, which is the final order of the FAA, was issued, things changed. And instead of going to the Ohio River, the stormwater flows from the airport are now going through and on my client's property. That is, those additional flows... Can I ask you, Chancellor, is there anything in the record that explains that that had to be done? There was something in the record about it could not flow into the Ohio. Is that right? Your Honor, my understanding of why they changed the project, what were they going to do with the stormwater, was a money issue. So it was much more expensive to go to the Ohio River rather than go through my client's property. And they're using my client's property as kind of a discharge site for overflows, but also to go to another creek that eventually goes through Ohio River several miles downstream. So I think it was a money issue that it was much cheaper to go through my client's property. So did you... Sorry, Judge Strantz, please continue. No, I'm fine. Go ahead. Did you present the argument to the FAA that they needed to supplement their EA? Yes, Your Honor, we did. And we did that through the complaint that we filed in the original case that was dismissed by this court a couple of years ago. So at that point, we had no obligation, and the FAA doesn't cite to any regulatory statutory authority otherwise that we have an obligation to inform the FAA when new significant circumstances occur. Regardless of that, we did inform them of this through the complaint that was filed. So they certainly had notice. And this is the original file. I know you know the facts of this case better than I do. The complaint in the original case that was dismissed, that was dismissed for timeliness reasons, correct? Correct, Your Honor. So why is this a new situation then? Well, what the court did in that original case was they dismissed the case for our claims regarding the original EA. They said we were not timely because pursuant to the FAA statute, we have to file that case within 60 days of the final order. We were way past that, but we tried to get over overcome those issues through lack of notice allegations that this court did not agree with. In the meantime, Your Honor, well, also in that case, in the opinion of that case, the court stated that if we wanted to raise the supplemental issues that we raised in that original complaint, we could file a new petition. And that's what we did. So this new petition is not about the FAA did in that original EA. This is primarily about events that happened after that EA was issued and after the FONSI was issued. Okay. Do you have an obligation to present this directly to the FAA first? We don't believe that we do, Your Honor. We could find, and this was part of our, you know, the research we went into the case. We're looking for statutory obligations, regulatory obligations for us to send notice to the FAA that there are new significant circumstances that required their review. There was no such requirement. And regardless of all that, Your Honor, we did inform them through the original complaint. They knew about these issues. And we also suspect that they knew otherwise as well. You know, the communications between the airport and the FAA must have, at some point, they must have known that this stormwater ditch project had to have changed. And instead of going to Ohio River, we're not going to my client's property and on my property. So is your argument that we have enough information in front of us to order the FAA to do a supplemental EA, or is that not what you're arguing? Yes, we believe that you do now, depending on how this court deals with the motions to supplement that we filed prior to oral argument and prior to the briefing in this case and during briefing. We filed two motions to supplement. The court ordered that they would consider that along with the merits of the case. So those motions have not been decided yet. But we would, again, respectfully request that you grant those motions so that information is in front of you in order for the court to make a full, have all the information in front of them to make a decision on the case. You know, not all the information that we have is before you. But the information we did provide you is more than enough, we think, for this court to order the FAA to take another look at this case and to look at these new significant impacts on the environment and particularly my client's property. Because the regulations require, I think, the FAA to be the one to look at or EPA to be the one to look at supplemental changes. My understanding is it about how that functions. But I want to understand exactly some of the changed parameters now. Is the airport expansion actively under construction now or not? My understanding is not. Well, the expansion itself has not started yet, although there have been some new structures that have been built at the airport. I don't know how related that is to the ALP that we've talked about before in our briefing. But the actual expansion of the runway into my client's property and other properties west of the airport has not occurred yet because there's other pending actions that are delaying that right now. Has the ongoing litigation in the district court under the takings clause been resolved? No, we are in a discovery phase in that case, Your Honor. And there's also there's an inverse condemnation case in the district court. And that's for just the stormwater drainage project. The other larger condemnation action that the airport filed against my client, that's in Kentucky State Court of Appeals right now. So there are two different issues there. Well, it seems to me there are a lot of moving parts about the facts that have changed since this was initially done. And I noticed that the defendant's response was that they were prepared to look at this issue. It seems to me you want them to look. They're now saying that they're willing to look. Are you in the position to open informal discussions or what do you propose for a method of resolution? Sure, we would be open to informal resolution in a matter like this. What we want the FAA to do is to take another look or take the first look at these new significant circumstances. Again, the big change was instead of the stormwater going, you know, this is a lot of stormwater. It's not a huge airport, it's a smaller airport, but it's a lot of water. Ohio River can handle that pretty well. My client's property, not so much. So, you know, and we're not talking about, you know, half acre, even a quarter acre, like five acres of impact, which is huge to my client. So regardless of all that, Your Honor, we will be open to an informal resolution to have the FAA and their consultants take another look at this. But so far we've been unsuccessful doing that. You know, we've met with the FAA several times. Not the FAA, but we've met with the consultant that was working on the environmental review underneath us. We've met with the airport several times. I think there were FAA officials there at those meetings. But, you know, this issue has not been resolved. And we're open to those discussions. We just want a result. We want the FAA to do their job and to review this under NEPA. You know, if they're going to destroy our client's property, they're going to destroy it. But we want to make sure that they do the proper environmental review before they do it. Counselor, it sounded as though a moment ago you were suggesting that we should, in our ruling, order that the supplementation of information be accepted or reviewed in promulgating our order. But wouldn't it, and maybe you're asking really for this, that we order or ask the FAA to re-examine the issue of the environmental issues and decide if supplementary information should be re-examined or examined by them in the first instance? Is that what you're really asking us to do? Right, Your Honor. My time is running out, so I'll try to conclude on this question. But we are asking for this court to require the FAA to examine for the first time, that we know of, these new significant circumstances that are calling, that are causing environmental impacts, substantial environmental impacts to downstream properties. That has not been done yet. And we would like you to further order that a supplemental EA or a supplemental environmental impact statement, because we think because of this new information, because of this new damage, environmental harm that's occurring, it no longer requires an EA, it will require an EIS. And we've briefed that issue as well, Your Honor. So we would ask that first, yes, we send this back to the FAA to review these new circumstances as it requires to underneath us and to produce a supplemental EIS. Thank you, Your Honor. Thank you. Ms. Roundtree? Good morning, Your Honors. Can you hear me? Yes. May it please the court. Your Honor, I would, Your Honors, I would like to begin by hitting three points that were touched upon in your discussion with the petitioner. And then I would actually like to spend a few minutes just orienting the court as to where specific areas are in this between the two projects. Because in order to resolve this case, the court does need to be able to distinguish between who's responsible for what project, what the project consists of, and where they are located with respect to one another. As to the first point, Your Honors, we're discussing whether there could be some sort of resolution. It seems like the court's suggesting out of court as to the issues here. I'd just like to point out that for purposes of the FAA, the method by which petitioners are attempting to get a supplemental NEPA decision out of FAA is actually one that should be discouraged. Though there is no formal regulation that says a petitioner must come directly to FAA, the NEPA regulations or the regulations that implement NEPA contemplate that it is the agency that will make the supplementation decision based on all information that's either submitted to it, additional information that FAA requires, dialogue between FAA and the petitioner or the person who claims there's new information. And the regulations contemplate that the agency will actually be given the opportunity to make that decision. A party that runs to court first and demands that an agency render a supplementation decision in the absence of any documents, because I'd like to make clear that when petitioners filed their first petition with this court that was ultimately dismissed, they didn't submit any documents to FAA. And so their use of the word notice is telling. They only provided notice of allegations. They provided no documents for FAA to review at that time. So what about the fact that they're saying that there are new change circumstances from this additional flooding and all that sort of thing? I would refer the court initially to page 106 of the appendix. There, there's a document that was prepared by the Delta Regional Authority, which is the authority that funded the ditch project, which is all separate from the one project here. That 2014 document, which was issued two years before the EA for the runway project was issued, said that the ditch project would consist of, and I'm going to use to help the court a little bit, and I'm referring to page 192 of the appendix. That 2014 piece of information from the Regional Delta Authority stated that, now here we have the airport. Green is petitioner's property. It stated that the run, the run, the ditch project, the ditch project would extend from north of the airport and it would extend west and then direct water south to Conn Creek, which is located down here. Petitioner's property, the southern portion, is located down here. So as of 2014, it was clear that the ditch project would be taking stormwater from this area, channeling it to the west, and channeling it south. This would impact petitioner's property. The only thing that occurred after 2016 when the EA for the was that an administrative advertisement for bids went out and the final phase of the project was completed. At that time, the project remained the same as it was proposed in 2014 with one exception. It still went, here's the, can you see this? It still went from the airport west. It connected to an existing ditch. It continued south. But what happened right about this area? Initially, the county had wanted to continue with surface work and create a ditch that would have gone across petitioner's property. Petitioners refused to grant an easement. And so what the county was this point, at which point they created an underground pipe. The underground pipe continued along this property, which is not petitioner's, and then exited off of that property where it intersected with Trigg Road. Before you spend any more time on that, isn't that the subject of the takings litigation below? No, I'm simply explaining to you that at this time, as of 2014, the general scheme of the ditch project was known that it would be channeling water down here. The only difference after 2016 is that we had an underground pipe versus a ditch. Well, if the question is, has there been alteration in the experience of this landowner as abutting to this to take a look at that problem and determine and speak specifically to whether a supplementation is needed or not? Well, what would have been required, and one more question, one more point I wanted to make is that no on the ground work has been done for the Roan Ray project. I just wanted you to know that. What would be required is for the petitioners to come to FAA and to say, for example, there are new circumstances that didn't exist at all and weren't contemplated at the time that you issued the original EA. Help me understand where that statutory or regulatory authority places that burden on the landowner as opposed to you once being on some sort of notice being required to yourself investigate? Well, Your Honor, there is no statement requiring that a party must come to FAA. And by the same token, there is no regulation that says when FAA learns of an allegation, particularly in a lawsuit, that it is to run and start looking for information. FAA is not implementing the Roan Ray project. It had nothing to do with the ditch project. That was a county project. But it's funding that project, right? No, no, no. FAA is not funding. That's actually where I wanted to start. The ditch project was proposed and implemented by the City of Henderson and the County of Henderson. It was funded by the Delta Regional Authority. Those are the three entities that are associated with the ditch project. No, but you're funding the extension of the runway, which is the same thing for purposes of Judge Strange's question, I think. I don't want to speak for Judge Strange, but I think that's what we're getting at here. There's overarching federal financial involvement in this would you repeat that sentence? I didn't hear it. No, I was just saying the federal government through the FAA is involved in the financing of the runway. So there is government financial involvement in this entire project. Yes, no, you're on a no-no. Please, I hope to make clear the Delta Regional Authority has nothing to do with FAA. That wasn't my question at all. Okay. I was asking you to confirm that there's federal funding involved in the runway extension here, right? Partial funding for the runway alone is being provided by FAA. Well, that was all I was asking. Very uncomplicated question. No, no, no. I'm so sorry. I thought I understood you to say that there was kind of a large federal umbrella that covered both projects. No, no. Okay. I want to interject a question, which is I believe I heard you say that the proper approach for the petitioners here is to come directly to the FAA and that you don't like the petitioners going to court first, which is what they did in the case that's right in front of us now. Correct. Now you know what they want, what their information is. Can you commit to considering the information that they have presented to us? If you're supposed to look at it first, have they presented it enough so that you can now proceed to look at it? Well, Your Honor, we offered you an analysis of what they've given us thus far, and it doesn't meet the criteria for supplementation. As an initial, right off the bat, it's not new information. As of 2014, petitioners could have known that there was going to be stormwater that was normally flowing on the surface now channeled directly to the area of their home or of their property. So it's not new information. And as I said, we've gone through the analysis in our brief as to whether there's significance, which is another requirement of the NEPA regulations, whether it's relevant to environmental concerns. Our brief explains there are four main criteria that have to be met. As based on the information that FAA has been provided by way of this legal action, there isn't sufficient information to trigger a NEPA analysis. So if we were to consider all of the evidence that they have presented, us have requested that we grant permission to supplement the record. You don't have a problem with that, I take it. I'm sorry, say that if... And can we grant their motion to supplement the record so that we can consider the evidence that they say they want to present to you and that you say you have responded to in your brief? Well, Your Honor, at this point, I think you have to look at that information. We've been forced to look at it. Okay, so... And they have no information about the ditch project. The only information that's been available has been in the hands of petitioner and we just received it with this petition. Okay, so I'm just trying to clarify where the dispute is. So you're saying you don't object to our granting the motion to supplement our record and you're saying that you have considered that information and you have in your brief to us told us that you will not grant a motion to supplement the EA, is that right? No, we've said that based on what they provided, that there is not sufficient or proper information that would require supplementation that would put FAA under a legal duty to supplement. Okay, so could they present to you a new set of materials, evidentiary materials, could they go forward at the conclusion of this case with new materials to show that they believe that there should be a supplementation of the EA or an EIS, which is what your opponent was saying he really wants here? If they want to come to FAA at any point, they are more than welcome to do so. And as for an EIS, the agency has already determined as to the runway project, which cannot be challenged, petitions are time barred, FAA already determined that the runway project would not have significant impacts on the human environment and thus an EIS was not required. Any supplementation for a county ditch project could not change that analysis of the runway project and thus a supplemental EIS would not be required. But as I said, is the ditch not part of the runway expansion? It is not, your honor. Please understand the ditch project has nothing to do with the runway project. Just a second, counselor. My understanding was that the ditch project had to do with water problems in the airport area that needed to be addressed before the runway was extended. That's partially correct. The reason, and it's in our brief, the reason that the county of Henderson proposed the ditch project was two-pronged. One was to stop flooding in the city of Geneva and another was to stop flooding on the airport. It was two-pronged and the process was to address both of those areas. That work did not have to be done before the airport runway project occurred. Perhaps where the confusion lies is that the airport is the subject of both actions but it is not connected at all. They are separate actions. I'm missing something because you're telling me that that project was created because there is runoff water in two concerning areas in that city and at the airport. So are you telling me that that project has nothing to do with standing or other runoff water at the airport? Because I thought you said earlier that it did have something to do with it. Please your honor, yes. When the ditch project was created and it had to be done whether there was a runway extension project or not, it needed to address existing flooding in the city of Geneva and at the airport. What will occur in terms of water after the runway extension has yet to be fully determined because no on-the-ground construction has occurred for purposes of the runway project. Did the original EA have to do with the airport expansion? That's all it was. It was, well, that's what it was about. It looked at other circumstances but the reason that EA was created was for the runway project. But you're saying that the ditch project had nothing to do with the runway expansion and only had to do with the existing airport? The existing problems in the county which happen to include the airport. And is there any requirement to do an EA regarding that? That's a county project. It is not federal and it is not subject to NEPA, which is a federal statute. Again, county project, municipal concerns, city flooding, and then a separate federal action implicated only because FAA provides funding. But the runway and FAA are entirely separate. I see I'm out of time. If your honors have any questions, though, I'd be more than happy to answer. Any further questions? Thank you. Thank you, your honors. To stay on that track, it doesn't matter who built that project. Ronald McDonald could have built that project. The important thing is what that project does. I'm not sure I understand your premise. Your opponent has said if it's a county project, NEPA doesn't apply. Is she right? No, she is not right because NEPA, there's no question here that the airport expansion, the federal action involved in that and the federal funding requires a NEPA review. There's no question about that. But she says it's a separate project from the expansion that it was undertaken prior to and we don't concede that. But even if it was, then there's still an obligation for the FAA to review the significant new circumstances that project creates because the stormwater from the airport and from the airport expansion is going to utilize that ditch project to transfer those substantial amounts of stormwater to my client's property. And let me point you to a document as well, this is part of our motion to supplement. It's document number 16-5 on page 39. That is part of the plan, the actual stormwater ditch project plan. And on that page, it's really hard to look at and read, admittedly, but when you have time to go back and look at it, if you do, you will see that the project changed. So council for FAA stated that the project had to change because my clients denied them right to access their property. They were going to put that pipe, water in the pipe through the property. They couldn't do that anymore. So instead, they decided to ramp that water above ground onto my client's property. And you'll see that ramp at page 39 of that document. Now that's a significant change. That's a significant change that council admitted happened after the EA was done. But who did that? It was the county that paid for that, right? Correct. But Your Honor, that doesn't matter. It doesn't matter who did it because under NEPA, there's an ongoing obligation to evaluate direct, indirect, and cumulative impact. And Your Honors, I can point you to a case that we cited in our brief talking about what a cumulative impact means. And a cumulative impact is the impact on the environment, which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions, regardless of what agency, federal or non-federal, or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time. That's Grand Canyon Trust v. FAA. So Your Honors, it doesn't matter who does the project. What matters is what that project causes. And in this case, it causes significant additional harm to my client and to properties downstream. Would you say that your motions to supplement the record contain all the information that you have to present to the FAA? Well, Your Honor, we would like to, if the court allows, to supplement the record even further because over the past couple weeks, as part of the other ongoing case, there's additional discovery that has been produced, additional photographs, and we can show additional damage to the property. I mean, it's a substantial problem, Your Honor. It's an economic detriment to my clients, and it's a certainly significant environmental harm to not just my client's property but the downstream property. They're essentially directing this water, instead of to the Ohio River, to my client's property. Well, then are you prepared to sit down and provide that information to the FAA for further discussions if we take them up on their statement that we stand ready to receive and review evidence of the purported stormwater and drainage issues to determine their relevance and whether supplementation of the runway project will be required? Of course we would, Your Honor. Are you prepared to take them up on that and provide the rest of the information in addition to the two supplements that you've already moved for? Of course, Your Honor. We would be certainly willing to do that. The question is, what power does the federal court have vis-a-vis the agency? Could we encourage you to undertake that presentation to the FAA and encourage the FAA to consider that presentation and hold your case in abeyance while you both sides work out whether or not a supplemental EA or anything else is warranted? Certainly, we would love to win this case, Your Honor, but under the circumstances, we would certainly be open to those conversations and continuing our conversations with the FAA to address these issues. So your time is up, but I'm going to ask Ms. Roundtree if she would be open to that as well because it seems that that might be a way to make people reasonably satisfied as opposed to having a winner or a loser from a lawsuit. Yes, Your Honor, and I particularly think it's relevant that Your Honor suggests that you hold the case in abeyance because, as I said, this is not a pathway that we would encourage other parties to take to get review under UBA. So I think the three judges obviously will need to confer. I was just presenting this as my independent idea, but what my thought is is if the three judges end up agreeing that we could hold the case in abeyance for a certain amount of time and let the parties work out a suitable arrangement. And I'm heartened to hear both of you say that you would be of that possibility. Any further comments from anyone? I realize that my suggestion is out of order, but I'm just hoping that we can come to the resolution that will be helpful to all. So we will temporarily hold it in abeyance until the panel acts, but two of you understand where my thoughts were going at least. So Your Honor, just to clarify, are you expecting the parties to go ahead and do that before you make any type of ruling? Well, it would be wonderful if you came to some agreement tomorrow. Yes. I guess the other thing that we'll throw in since we're a little bit beyond our scope, perhaps, is that we have a wonderful mediation department that could facilitate meetings and give you a place both to meet and share your concerns and a mediator to be involved. Yes. A good job. They do a good job. Judge Stranch has an excellent point. Well, I'll be happy to reach out to Ms. Roundtree and we can discuss all those issues in the meantime. Thank you. Thank you both. You both have done an excellent job arguing. We conclude our argument phase of this case and you may disconnect and the clerk may get the next case ready for us. Thank you. Thank you, Your Honor.